**UNITED STATES of America,
Appellee,**

v.

**Emilio Henquies PEREZ, Appellant.**

**No. 73–1638.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1973.

Decided Jan. 2, 1974.

Alfred Z. Bernstein, Rosslyn, Va. [Court-appointed counsel] (Bernstein, Ward & Glassman, Rosslyn, Va. on brief), for appellant.

Paul A. Scott, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

Emilio Henquies Perez was convicted of assaulting an officer of the District of Columbia Department of Corrections at the District of Columbia penal institution—the Lorton Reformatory—at Lorton, Virginia, and he appeals. The act of which defendant was convicted is made a crime under the D.C.Code, § 22-

505 (1967 Ed.Supp. V 1972). The trial was held in the United States District Court for the Eastern District of Virginia. The sole contention raised on appeal is that the court lacked jurisdiction and that the only court having jurisdiction to try defendant was the Superior Court of the District of Columbia. We disagree, and thus affirm the judgment from which the appeal is taken.

■ Assault on a correctional officer of a District of Columbia penal institution is made a criminal act by § 22–505 whether such institution is located within the District of Columbia or elsewhere.[1] Prior to 1965, when this statute was amended, it rendered criminal only assaults on police officers, and then only when the assault occurred within the District of Columbia. *See* R.S., D.C., § 432; June 29, 1953, 67 Stat. 95, ch. 159, § 205. But the 1965 amendment expanded the class of protected officials and gave the statute extraterritorial reach with regard to officers or employees of prisons, correctional institutions, and juvenile detention facilities. After the 1965 amendment, we held in three cases that the United States District Court for the Eastern District of Virginia had jurisdiction to try offenders under the statute when the assault was committed outside the District of Columbia and within the Eastern District of Virginia. United States v. Smith, 398 F.2d 595 (4 Cir. 1968); United States v. Haley, 417 F.2d 625 (4 Cir. 1969); United States v. Horton, 423 F.2d 474 (4 Cir. 1970).

Perez contends, however, that the Eastern District of Virginia lost juris-diction of such cases by the enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970, P.L. 91–358, 84 Stat. 473. That Act reorganized the judicial system of the District of Columbia. It sought to eliminate "the chaos and confusion resulting from disagreement between Federal and Local Courts" within the District of Columbia, H.R.Rep.No. 91–907, 1970 D.C.Code, Legislative and Administrative Service 420, by establishing two sets of courts: one set like the federal courts in other districts, having the same jurisdiction and such additional functions as relate to the national character of the District of Columbia as the seat of federal government, and the other like the trial and appellate courts of any state, having jurisdiction comparable to the usual state court jurisdiction. Williams, District of Columbia Court Reorganization, 59 Georgetown L.J. 477, 533–34 (1971). *Inter alia,* the Act created the Superior Court of the District of Columbia, giving it general trial jurisdiction in civil and criminal matters. Specifically, in regard to criminal jurisdiction, the Superior Court was given jurisdiction (except for certain cases pending in the United States District Court for the District of Columbia when the Act became effective or instituted within a certain period thereafter) "of any criminal case under any law applicable exclusively to the District of Columbia." D.C.Code § 11–923(b) (1973).

Briefly stated, Perez's argument is that the law under which he was convicted is a "law applicable exclusively to the District of Columbia" because it out-

---

1. § 22–505. Assault on member of police force or fire department.

(a) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia, or any officer or member of any fire department operating in the District of Columbia; or any officer or employee of any penal or correctional institution of the District of Columbia or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being con-fined pursuant to law in any facility of the District of Columbia, *whether such institution or facility is located within the District of Columbia or elsewhere,* while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than five years or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he has reason to believe is a law enforcement officer, whether or not such arrest is lawful. (Emphasis added).

laws assaults only on District of Columbia correctional officers, that jurisdiction is thus vested in the Superior Court of the District of Columbia, and that it follows that the Eastern District of Virgina was thereby ousted of jurisdiction.

■ We have no occasion to consider the effectiveness or validity of D.C.Code § 11–923(b) to vest jurisdiction in the Superior Court to try an assault on a D.C. correctional officer at Lorton, Virginia.[2] Certainly it is effective and valid to vest jurisdiction in the Superior Court to try an assault of a protected District of Columbia officer or employee when the assault is alleged to have been perpetrated within the District of Columbia.

■ However, regardless of whether § 11–923(b) vests jurisdiction in the Superior Court to try all offenses under § 22–505 or only those occurring within the District of Columbia, we cannot conclude that the creation of the Superior Court, and the conferral of criminal jurisdiction on it, was an express or implied ouster of the jurisdiction of the Eastern District of Virgina to try an offense under the District of Columbia Code allegedly committed within the Eastern District.

Under 18 U.S.C. § 3231, the Eastern District of Virginia had jurisdiction to try "all offenses against the laws of the United States," and it had venue to try all such offenses committed in that district. Rule 18, F.R.Crim.P. Section 3231 was not expressly repealed by the Court Reorganization Act,[3] and we do not think that the Act had that implied effect.

The basic purpose of the Court Reorganization Act was no more than to di-vide the pre-existing jurisdiction of the court system of the District of Columbia between the newly created Article I courts, which were to handle local matters, and the reconstituted Article III courts, which were to handle normal federal district court business and matters arising from the special status of the District of Columbia as the seat of national government. Accomplishment of that purpose would not require any change in the pre-existing jurisdiction of courts outside the District of Columbia.

■ Furthermore, we are constrained not to imply divestment of the Eastern District's jurisdiction because of several constitutional provisions. Article III of the Constitution provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Article III, § .2, cl. 3. Additionally, the Sixth Amendment states that:

[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury of the . . . district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . .

To construe the Court Reorganization Act to imply divestment of the Eastern District's jurisdiction would raise a substantial question as to whether the Act was in violation of these provisions. It is axiomatic that statutes are to be interpreted to avoid constitutional issues unless their plain and explicit meaning requires that constitutional issues be met and decided.

■ Since the Act neither expressly nor impliedly repealed the jurisdiction of

2. See generally, U.S. Constitution, Article I, § 8, cl. 17; Article III, § 2, cl. 3; Sixth Amendment.

3. *Compare* 28 U.S.C. § 1363 (Court Reorganization Act's basic provision divesting federal district courts of jurisdiction over local *civil* matters in the District of Columbia, e. g., under 28 U.S.C. § 1331, the general

federal question jurisdictional provision), *with* D.C.Code § 11–521(a)(2) (1967) (repealed) (customarily regarded as the statutory basis of the D.C. federal district court's local criminal jurisdiction before the Court Reorganization Act, *see* Williams, supra, p. 537, n. 433) *and* 18 U.S.C. § 3231 (general federal court criminal jurisdiction).

the Eastern District of Virginia under § 3231, including jurisdiction to try violations of the provisions of the District of Columbia Code having extraterritorial effect, that jurisdiction remains unimpaired. The judgment appealed from will be

Affirmed.