UNITED STATES, Appellant,

v.

Ivan C. THOMPSON and Gerald E. Thompson, Appellees.

UNITED STATES, Appellant,

v.

James R. McCLOUD and Leon G. Joyner, Appellees.

Nos. 9296, 9298.

District of Columbia Court of Appeals.

Argued Sept. 11, 1975.

Decided Nov. 14, 1975.

Jonathan B. Marks, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Nicholas Gilman, Asst. U. S. Attys., were on the brief, for appellant.

Michael L. Rankin, Washington, D. C., for appellee Ivan C. Thompson.

Thomas W. Farquhar, Washington, D. C., appointed by the court, for appellees in No. 9298.

Before KELLY, KERN and GALLAGHER, Associate Judges.

KERN, Associate Judge:

In this appeal the government questions the dismissal by the trial court of counts in two indictments [1] charging appellees with violations of D.C.Code 1973, § 22–505(a). Section 22–505(a) provides:

> Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia, or any officer or member of any fire department operating in the District of Columbia; or any officer or employee of any penal or correctional institution of the District of Columbia, or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere, while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than five years or both.
>
> . . .

Noting the language dealing with employees of District of Columbia penal or correctional institutions, viz., "whether such institution or facility is located within the District of Columbia or elsewhere", the trial court decided that the statute as a whole had extraterritorial effect. The jurisdiction of the District of Columbia courts, however, is specifically limited to criminal cases "under any law applicable exclusively to the District of Columbia." D.C.Code 1973, § 11–923(b)(1). Because Section 22–505(a) was considered to have extraterritorial effect, the trial court concluded that it lacked jurisdiction to hear the charges against appellees under that statute and entered orders of dismissal.

Appellant argues that the Superior Court does indeed have jurisdiction of offenses charged under Section 22–505(a) because the section is applicable exclusively to the District of Columbia—the troublesome language regarding the location of correctional institutions being in its view simply a *description* of the class of penal and correctional officers protected by the statute rather than an indication of the locus of the offense. Alternatively, the government argues that the only part of Section 22–505(a) having extraterritorial effect applies to penal or correctional officers and therefore that the Superior Court had jurisdiction of that part of Section 22–505 proscribing assaults on police officers, with which appellees here were charged.

We do not reach the government's first argument since it is unnecessary to determine whether the District of Columbia courts have jurisdiction of an offense with which appellees were not charged.[2] Turning to the government's alternative argument, we agree that the local courts have

---

1. Four appellees are involved in this appeal. Appellees McCloud and Joyner were indicted in two counts for their alleged assaults on two members of the Metropolitan Police Department in the District of Columbia on July 10, 1974. Appellees Gerald and Ivan Thompson were charged in a five-count indictment on April 4, 1974, of which three counts alleged assaults on two officers of the Metropolitan Police Department on February 16, 1974.

2. This argument was apparently resolved in dictum in a recent decision of this court. See *Rivers v. United States*, D.C.App., 334 A.2d 179, 182 n. 7 (1975). The court there commented that, "The only parts of that statute [Section 22–505] which are intended to have extraterritorial effect are those relating to District of Columbia correctional employees in adult or juvenile institutions. Those portions dealing with police and fire department officers are limited to those 'operating in the District of Columbia.'" In addition, the Fourth Circuit has ruled that Section 22–505(a) does have extraterritorial effect and that as a result the offense is cognizable in federal court pursuant to 18 U.S.C. § 3231 (1970). *United States v. Perez*, 488 F.2d 1057 (4th Cir. 1974). We believe that it is appropriate to defer resolution of this issue, however, until it is presented squarely by an individual prosecuted under the allegedly extraterritorial provision.

jurisdiction of that part of Section 22–505(a) prohibiting assaults on police officers, and therefore we reverse.

Congress enacted Section 11–923(b)(1) as part of the District of Columbia Court Reform and Criminal Procedure Act of 1970, and provided that "the Superior Court has jurisdiction of any criminal case under *any law applicable exclusively* to the District of Columbia." (Emphasis added.) As the trial court reads this section, "any law" means "any statute," and a statutory section in its entirety must apply exclusively to the District in order for the Superior Court to have jurisdiction of any of the prohibitions or directions contained in the unseverable statute. But Congress did not say "any statute," "any act of Congress" or "any entire section." Instead, it chose the broader term "law," which we interpret to mean any distinct, self-contained directive or prohibition.

It is a maxim of statutory construction that the language of a statute should be interpreted in accordance with its ordinary and usual sense, and "with the meaning commonly attributed to it." *Caminetti v. United States,* 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917); *Temporaries, Inc. v. District Unemployment Compensation Bd.,* D.C.App., 304 A.2d 14 (1973); *Rosenberg v. United States,* D.C.App., 297 A.2d 763 (1972); *General Motors Acceptance Corp. v. One 1962 Chevrolet Sedan,* D.C.App., 191 A.2d 140 (1963); *United States v. Public Util. Comm'n,* 80 U.S.App.D.C. 227, 151 F.2d 609 (1945). Black's Law Dictionary 1028 (4th ed. 1968) compiles a list of definitions of the word "law," including a "distinct and complete act of positive law; . . . [a] command which obliges a person to acts or forebearances of a class; . . . [a] rule of civil conduct commanding what is right and prohibiting what is wrong." Webster's Unabridged Dictionary defines law as "a rule or mode of conduct or action that is proscribed or formally recognized as binding by a supreme controlling authority or is made obligatory by a sanction . . . made, recognized, or enforced by the controlling authority." M. Webster, Third New International Dictionary of the English Language 1279 (Unabridged ed. 1969).

Consequently, we must reject the trial court's definition of the term which confined "law" to mean only the unseverable statutory sections as they appear in the District of Columbia Code.

Relying on a broader definition of the word, we conclude that Section 22–505(a) contains in effect three different "laws"—three distinct and self-contained prohibitions of conduct. The first law provides a fine and imprisonment for anyone who "assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia." Act of June 29, 1953, ch. 159, § 205, 67 Stat. 95. The second law was added to Section 22–505(a) by way of amendment, and extended the same penal sanctions to anyone who assaults "any officer or employee of any penal or correctional institution of the District of Columbia, or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere." Act of Oct. 20, 1965, Pub.L. No. 89–277, § 1, 79 Stat. 1011. The final law was also added by way of amendment to Section 22–505(a) and it extended the same sanctions to persons who assault "any officer or member of any fire department operating in the District of Columbia." Act of Aug. 11, 1971, Pub.L. No. 92–92, 85 Stat. 316.[3]

3. It is not unusual for one statute or even one section of a statute to contain more than one "law", in the sense that several different acts are prohibited. For example, a crime

The historical development of the three laws contained in Section 22–505(a) emphasizes their distinct and separable nature. Each provision was enacted individually over a period of twenty years, and each was intended to protect a specific and well-defined class of persons. Furthermore, each provision had a clear purpose of creating a new law or penalty and each was intended to prevent one type of conduct deemed by the legislature to be harmful to the public order. See S.Rep.No.92–322, 92d Cong., 1st Sess. 1–3 (1971); H.R.Rep.No.92–170, 92d Cong., 1st Sess. 1–5 (1971), U.S.Code Cong. & Admin.News 1971, p. 322; S.Rep.No.89–640, 89th Cong., 1st Sess. 1–2 (1965); H.R.Rep.No.89–1130, 89th Cong., 1st Sess. 1–3 (1965), U.S.Code Cong. & Admin.News 1965, p. 1002; S.Rep.No.83–364, 83d Cong., 1st Sess. 6 (1953); H.R.Rep.No.83–514, 83d Cong., 1st Sess. 6 (1953). Nowhere in the legislative history of these provisions is there an indication that Congress intended all three laws to be interdependent, nor is there any suggestion that the alleged extraterritorial reach of the provisions dealing with correctional officers extends or applies to the other two.

Turning to D.C.Code 1973, § 11–923, there is also nothing in the legislative history of that section to indicate that the Superior Court does not have jurisdiction of a law which applies exclusively to the District of Columbia merely because *that* law appears in the same statute with *another* law having extraterritorial effect. In fact, just the opposite purpose appears in the history of Section 11–923. Both the Senate and the House of Representatives Reports clearly illustrate Congress' intent to transfer "all purely local matters" to the District of Columbia courts. See S.Rep. No.91–405, 91st Cong., 1st Sess. 4–5

(1970); H.R.Rep.No.91–907, 91st Cong., 2d Sess. 33 (1970), U.S.Code Cong. & Admin. News 1970, p. 551. Moreover, the Reports speak of transferring jurisdiction over D. C. "felonies", "crimes", or "offenses", to the Superior Court. The use of these terms as descriptions of the law over which the Superior Court has jurisdiction illustrates Congress' concern with each individual criminal violation rather than with entire statutes or enactments which may contain several offenses or laws. See S. Rep.No.91–405, *supra*, at 24; H.R.Rep.No. 91–907, *supra*, at 32–33, U.S.Code Cong. & Admin.News 1970, p. 551.

We conclude, therefore, that the trial court erred in its reading of Sections 11–923 and 22–505(a). Section 11–923 was intended to transfer jurisdiction of all purely local matters to the Superior Court, whether such local matters are isolated felonies or related offenses contained in sections of the D.C.Code. The provision of Section 22–505(a) with which appellees here were charged protects police officers of the District of Columbia in the performance of their official duties. As this court commented in *Rivers v. United States,* D.C. App., 334 A.2d 179, 181 (1975), it is difficult to imagine a more "localized" offense than one concerned with activity occurring in and involving employees of the District of Columbia. The local nature of the offense, coupled with the use of distinct, self-contained language constituting the crime, lead us to the conclusion that the law prohibiting assault on a police officer under Section 22–505 vests jurisdiction in the Superior Court under Section 11–923(b)(1).

We are not persuaded by appellees' argument that the assault on a police officer prohibition cannot be severed from the al-

---

and the attempt to commit the crime are combined in D.C.Code 1973, § 22–403 (malicious destruction of property and attempted malicious destruction of property); two distinct but related crimes are combined in D.C. Code 1973, § 22–1401 (forgery and uttering a forged paper) and in § 22–2801 (rape and statutory rape); and several sorts of activity constituting disorderly conduct are contained in D.C.Code 1973, § 22–1121 (annoying, congregating, shouting, interfering with others, and causing a disturbance).

legedly extraterritorial provision concerning penal and correctional officers. In at least one case where a part of a statute was challenged for vagueness, we concluded that the clause was unconstitutionally vague and severed it from the statute. *District of Columbia v. Walters*, D.C.App., 319 A.2d 332 (1974). *See also* 2 Sutherland, Statutory Construction §§ 44.02—.03 (4th ed. 1973). We find it reasonable to conclude that Congress would have intended to confer jurisdiction over the two local offenses, even assuming arguendo that a court *might* find there is no jurisdiction over the assertedly extraterritorial offense. The "law" under which appellants were indicted in this case is in our view "applicable exclusively" to the District of Columbia and therefore Section 11–923 confers jurisdiction on the Superior Court over the offenses in this case, and the counts in the indictments must be reinstated.[4]

*So ordered.*

---

[4]. Appellees' reliance on our decision in *Hubbell v. United States*, D.C.App., 289 A.2d 879 (1972) is inapposite. In *Hubbell* we ruled that the Superior Court did not have jurisdiction of 36 C.F.R. § 50.19 (1971), since that section (and in fact all of part 50) was applicable outside of the District of Columbia in Maryland and Virginia. In this case, however, the alleged extraterritoriality appears in another law contained in Section 22–505(a), but not in the law under which appellees were indicted.